FILED
2016 Jun-30 PM 04:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

**FELESIA WILLIAMS**
**AND TRE'SEANDAH DOBBS,**

**PLAINTIFF,**

**v.** **CIVIL ACTION NO.**

**R. R. DONNELLEY & SONS**
**COMPANY,**

**DEFENDANT.** **JURY TRIAL REQUESTED**

# COMPLAINT

## I. JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 1367, 2201 and 2202 and pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and pursuant to the Code of Alabama § 25-5-11.1. District Court jurisdiction exists pursuant to 29 U.S.C. §§ 215(a)(3) and 217 and 28 U.S.C. § 1331. The jurisdiction of this Court is invoked to secure the protection and redress the deprivation of rights secured by the FLSA and Code of Alabama § 25-5-11.1.

## II. PARTIES

2. Plaintiff, Felesia Williams, (hereinafter "Williams" and/or "Plaintiff") is a resident of Birmingham, Jefferson County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this case. Plaintiff was an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District, Southern Division.

3. Plaintiff, Tre'Seandah Dobbs (hereinafter "Dobbs" and/or "Plaintiff") is a resident of Birmingham, Jefferson County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this case. Plaintiff was an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District, Southern Division

4. Defendant R. R. Donnelley & Sons Company (hereinafter "Defendant"), is a company registered and doing business in the State of Alabama. Therefore, this Court has personal jurisdiction over Defendant. Defendant is engaged in commerce from the production of goods as contemplated by 29 U.S.C. §§ 203(r), 203(s).

## III. STATEMENT OF FACTS

5. Plaintiffs hereby incorporate by reference each of the allegations contained in paragraphs 1-4 above.

*Felesia Williams*

6. Plaintiff Williams began work with Defendant on February 10, 2016.

7. Defendant employed Plaintiff Williams as a driver.

8. At all times during the employment relationship, Defendant classified Plaintiff Williams as an hourly paid, non-exempt employee.

9. Plaintiff Williams' rate of pay was $10.00 per hour with an overtime rate of $15.00 per hour.

*Tre'Seandah Dobbs*

10. Plaintiff Dobbs began work with Defendant on February 2, 2016,

11. Defendant employed Plaintiff Dobbs as a driver.

12. At all times during the employment relationship, Defendant classified Plaintiff Dobbs as an hourly paid, non-exempt employee.

13. Plaintiff Dobbs' rate of pay was $10.00 per hour with an overtime rate of $15.00 per hour.

*Facts Common to Both Plaintiffs*

14. Defendant did not require Plaintiffs to hold a commercial driver's license in order to work the position of "driver."

15. Each Plaintiff drove an assigned route each work day.

16. Each Plaintiff would sort totes, boxes and cases; scan the totes and cases; load a van supplied by Defendant, and then deliver to pharmacies and obtain a signed receipt. At the end of the work day they would unload the empty totes.

17. Each Plaintiff's route stayed the same for each work day.

18. Each Plaintiff worked exactly the same number of hours each work day other than as affected by traffic.

## IV. COUNT ONE – FLSA – Overtime Violations (Both Plaintiffs)

19. Plaintiffs hereby incorporate by reference each of the allegations contained in paragraphs 1-18 above.

20. When initially hired, both Plaintiffs had to go through training.

21. Defendant paid Plaintiff Dobbs for her training time.

22. Defendant did not pay Plaintiff Williams for her training time, resulting in two full shifts of unpaid overtime labor.

23. At the beginning of their employment, Defendant ordered Plaintiffs to report to work by no later than 3:00 a.m.

24. For approximately two weeks, Defendants did not pay Plaintiffs for work performed between 3:00 a.m. until 5:00 a.m.

25. When Defendant hired Plaintiffs, Defendant had Plaintiffs "sign in" to record their hours worked, but Defendant did not pay Plaintiff according to the "sign in" times.

26. After approximately two weeks, Defendant provided Plaintiff with a time clock.

27. Plaintiffs used Defendant's time clock for approximately four days.

28. After the time clock, Defendant required Plaintiffs to sign in and out using an application on their personal cell phones.

29. After approximately the third week of employment, Plaintiffs' supervisor, Felton Burroughs, told Plaintiffs that he would determine the time they worked.

30. Burroughs, and possibly other management employees with Defendant, altered the time worked by Plaintiffs to lessen the number of overtime hours worked by Plaintiffs.

31. Plaintiff Williams often worked six days per week, but was paid for five days.

32. During the first two weeks of her employment, Williams worked approximately four hours for which she was not paid.

33. Because Plaintiffs worked more than forty hours during those weeks, Defendant failed to Plaintiff overtime compensation for approximately four hours per day and also the training days.

34. Defendant did not allow Plaintiffs to take any breaks, including a break for meals.

35. Plaintiff Dobbs worked at least five hours of overtime each week since she ran the same route every day.

36. On March 25, 2016, Defendant added Walgreens to Dobbs' route.

37. As a result of this route change, Dobb's overtime hours worked changed from five hours to seven hours.

38. Beginning March 25, 2016, Dobbs worked at least seven hours of overtime each week, but was often paid less than seven hours of overtime because of the actions of Burroughs in reducing the number of overtime hours Plaintiff Dobbs worked.

39. Both Plaintiffs arrived at work before the start of their 5:00 a.m. shift and performed work for the benefit of Defendant for which they were not paid.

40. Because both Plaintiffs regularly worked over forty hours in a work week, the denial of pay for the pre-shift work amounted to a denial of overtime pay.

41. Defendant intentionally violated the FLSA by failing to pay Plaintiffs each and every hour of overtime worked at one and one-half times their regular hourly rate of pay.

42. As a result of Defendant's intentional violation of the FLSA, Plaintiffs have been damaged, suffering loss of overtime pay.

## V. COUNT TWO – FLSA – Overtime Retaliation (Plaintiff Williams Only)

43. Plaintiffs hereby incorporate by reference each of the allegations contained in paragraphs 1-42 above.

44. Defendant employed CAG Logistics, Inc. to provide HR functions for the company.

45. On June 10, 2016, Plaintiff Williams complained to Derrick Lance of CAG that she was not being paid for all of her overtime hours.

46. Seven days after Plaintiff Williams complained, Assistant Aquila, on behalf of Burroughs, asked Williams if Plaintiff Williams had "called corporate" to complain.

47. On June 20, 2016, in retaliation for Plaintiff Williams' complaints regarding the fact that Burroughs was not paying Plaintiff Williams' for all overtime hours earned, Defendant terminated Plaintiff for a false reason that was fabricated by Burroughs.

48. Defendant's actions in terminating Plaintiff's employment was a willful and intentional violation of the FLSA.

49. As a result of Defendant's willful and intentional violation of the FLSA, Plaintiff has been damaged, suffering loss of pay, and mental anguish.

## VI. COUNT THREE – CODE OF ALABAMA § 25-5-11.1 – Worker's Comp Retaliatory Discharge (Plaintiff Williams Only)

50. Plaintiffs hereby incorporate by reference each of the allegations contained in paragraphs 1-49 above.

51. On June 14, 2016, Plaintiff Williams suffered an on-the-job injury while loading her truck.

52. The injury occurred when Aquila was throwing totes to Plaintiff while Plaintiff was loading the van.

53. Several totes fell and landed on Plaintiff's right wrist causing injury.

54. Both Aquila and another manager, Pete Butcher, witnesses the injury, but failed and refused to fill out and create a worker's compensation incident report.

55. Plaintiff requested that Aquila allow her to go to the doctor that day, but Aquila denied Plaintiff's requests and required Plaintiff to run her regular route.

56. On June 15 and 16, 2016, Plaintiff Williams continued to complain to Defendant's management that she needed to see a doctor because of the on-the-job

injury to her arm. Defendant's management continued to be deny Plaintiff request and continued to direct Plaintiff to run her scheduled route.

57. On Thursday, Plaintiff told Burroughs she needed to see the doctor because of the injury.

58. Burroughs denied Plaintiff's request to see a doctor and directed Plaintiff to run her scheduled route.

59. On June 17, 2016, Plaintiff spoke with Lance at CAG Logistics.

60. Lance provided to Plaintiff an excuse to miss work and allow her to seek treatment from Defendant's designated worker's compensation doctor employed by American Family Care.

61. Plaintiff followed Lance's instructions and she sought treatment at American Family Care, resulting in Plaintiff to miss work on Friday, June 17, 2016.

62. On June 20, 2016, Plaintiff returned to work with her doctor's excuse for Friday.

63. Burroughs told Plaintiff that she was insubordinate for "going over his head," terminated Plaintiff's employment, and had her escorted off the premises and threatened to call the police if she ever came back.

64. Plaintiff Williams called both Lance and another individual with CAG, Cindy Arizmendi, both of whom told Plaintiff that she could not be fired "while on worker's comp."

65. Arizmendi later told Plaintiff that she was fired because Burroughs said she walked off the job, which was false.

66. Defendant retaliated against Plaintiff for seeking care for her work related injury in violation of Code of Alabama § 25-5-11.1.

67. As a result of Defendant's violation of Code of Alabama § 25-5-11.1, Plaintiff has been damaged, suffering loss of pay and mental anguish.

## VII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray for the following relief:

A. The Court issue proper process to compel Defendant to answer or otherwise plead to the allegations contained in the Complaint;

B. This Court award Plaintiffs the amount of their back overtime pay, plus an additional equal amount as liquidated damages; nominal damages; and special damages;

C. For Plaintiff Williams' termination claim, Plaintiff seeks back pay, front pay, compensatory damages, punitive damages, nominal damages; special damages,

C. That Plaintiffs be granted judgment against Defendant for all reasonable attorneys' fees, costs, disbursements and interest; and

D. For such other and further relief as this Court deems equitable, proper and just.

David R. Arendall

Allen D. Arnold

OF COUNSEL:
ARENDALL & ARNOLD
2018 Morris Avenue, Third Floor
Birmingham, AL 35203
205.252.1550 – Office
205.252.1556 – Facsimile

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

OF COUNSEL

**SERVE DEFENDANT:**

R. R. Donnelley & Sons Company
c/o Agent for Service of Process
C T Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104